IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00390-GPG-NRN

ZOE JOHNSON

    Plaintiff(s),

v.

UNIVERSITY OF COLORADO,
JUSTIN SCHWARTZ, in his official capacity as Chancellor
of the University of Colorado Boulder;
LLEN POMEROY, in her individual capacity,
ELIZABETH K. SWANSON, in her individual capacity;
SEQUOIA K. HILL, in her individual capacity; and
DANIE EDWARDS, in her individual capacity,

    Defendant(s).

_____

**DEFENDANT ELIZABETH K. SWANSON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
_____

Defendant Elizabeth K. Swanson, by and through her undersigned counsel Josh A. Marks of Berg Hill Greenleaf Ruscitti, LLP, and pursuant to F.R.C.P. 12(b)(6), seeks her dismissal from the Plaintiff's Amended Complaint as pled against her, as follows.

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR.7.1 and this Court's practice standards, undersigned counsel certifies that he has conferred with counsel for Plaintiff regarding the relief requested herein and can state that Plaintiff opposes the dismissal of Elizabeth K. Swanson. Additionally, this Motion does not raise deficiencies that are easily corrected in a revised complaint.

## I. INTRODUCTION

Plaintiff filed the current action challenging the University of Colorado's (the "University") Nondiscrimination Policy. Plaintiff proceeds under 42 U.S.C. § 1983 asserting that both the University and individuals violated the First Amendment. The challenge to the application of the Nondiscrimination Policy targets Professor Swanson along with two employees of the Office of Internal Equity ("OIEC"), the arm of the University at its Boulder campus that reviews and investigates reports.

As relevant here, Plaintiff asserts claims against Defendant Elizabeth K. Swanson (Professor Swanson) because, as required by that Policy, she reported complaints about comments made by Plaintiff in the class setting. This Motion invokes qualified immunity for Professor Swanson because the law is not clearly established that her actions would deprive Plaintiff of any First Amendment free speech rights.

## II. BACKGROUND

The Amended Complaint [Doc. 39] asserts a First Amendment retaliation theory against Professor Swanson seeking monetary damages. *Id.* at ¶ 81. Plaintiff is an undergraduate student at the University's Boulder campus and a member of the choir ensemble, which is led by Professor Swanson. *Id*. at ¶¶ 49 and 51. During an October 2024 rehearsal that involved a LGBTQ Pride and Pride history discussion, Plaintiff questioned the need for the discussion in remarks to fellow choir students. *Id.* at ¶ 55. Offended by Plaintiff's comments, multiple students reported the comments to Professor Swanson. *Id*. On a different choir practice date, Plaintiff commented to a fellow

2

classmate on a male choir member's manner of dress. *Id.* at ¶ 56. That comment apparently offended another student, who reported it to Professor Swanson. *Id.*

Professor Swanson then tried to set an in-person meeting with Plaintiff concerning these complaints. *See* Doc. 39-1, pg. 4. Plaintiff refused multiple requests to set up a meeting and accused Professor Swanson of harassment for trying to discuss these concerns with her. *Id.* at pgs. 2-4. Thwarted in her efforts to obtain Plaintiff's explanation of the events to fully understand the complaints, and under an obligation as a mandatory reporter to report potential violations of the University's Nondiscrimination Policy, Professor Swanson forwarded the student concerns on to the Boulder campus' Office of Institutional Equity and Compliance ("OIEC") and so advised Plaintiff. *Id.* at pg. 2 and Doc. 39, ¶¶ 8, 58. Importantly, Plaintiff does not allege any punitive action by Professor Swanson, such as requiring an apology to her fellow students or suspending her from the choir.

As is further discussed below, Professor Swanson's alleged actions do not give rise to a clearly established First Amendment violation sufficient to overcome qualified immunity.

### III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681.

A complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

As the present motion challenges Plaintiff's Amended Complaint under qualified immunity, the familiar standards surrounding that doctrine also apply. Qualified immunity is immunity from suit and not a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citation omitted). Thus, at this stage of the litigation, the plaintiff must (1) allege a violation of a constitutional right and (2) the right must be clearly established at the time of the defendant's alleged misconduct. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). A court may decide either prong first. *Tolan v. Cotton*, 572 U.S. 660, 656 (2014).

Binding authority "place[s] the burden on the plaintiffs to negate a qualified-immunity defense." *Sanchez v. Guzman*, 105 F.4th 1285, 1294 (10th Cir. 2024) (citations omitted). Once asserted, the defense creates a presumption that the defendant is immune from suit that must be overcome by the plaintiff. *Id*. at 1293. "The factual allegations must be specific and non-conclusory, and sufficient for a district court to determine that those facts, if proved, demonstrate the defendant is not entitled to qualified immunity." *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001) (citation and internal quotations omitted).

To prove that the law is clearly established, a Plaintiff must meet both qualitative and quantitative requirements. "Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case* at issue exists." *Sanchez,* 105 F.4th at 1293. While a plaintiff is not required to identify a prior case with identical facts, precedent that encompasses "materially similar conduct" or applies "with obvious clarity to the conduct at issue" is required to place the constitutional question "beyond debate". *Id.* at 1292-93. In the absence of Tenth Circuit or Supreme Court precedent, a uniform body of law from other circuits may also create clearly established law. *Irizarry v. Yehia*, 38 F.4th 1282, 1293-94 (10th Cir. 2022).

## IV. ARGUMENT

Professor Swanson's limited acts of trying to meet with Plaintiff and then forwarding the student complaints on to the OIEC for review as a mandatory reporter are not clearly established retaliatory actions under the First Amendment.

5

Here, Plaintiff proceeds under a First Amendment retaliation framework described in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2010). Doc. 39, ¶ 69. As more fully discussed below, there is insufficient precedent from the Supreme Court or the Tenth Circuit to place Professor Swanson on notice that her actions were sufficiently and objectively "chilling" to give rise to a First Amendment retaliation claim under that framework. Nor is there any uniform body of decisions from other federal courts of appeal that would create clearly established legal authority in the absence of Tenth Circuit authority.

To state a claim for First Amendment retaliation outside of the employment context, a plaintiff must show that 1) she engaged in constitutionally protected activity; 2) the defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) that the defendant's adverse action was substantially motivated as a response to the protected activity. *Worrell*, 219 F.3d at 1212. Assuming (for purposes of this Motion only) that Plaintiff engaged in protected speech, no prior case could provide sufficient notice to someone in Professor Swanson's position that requesting to meet with a student and then (as a mandatory reporter) forwarding on student complaints for review by the unit of the University that investigates such complaints would give rise to First Amendment liability.

As of November 2024, the Supreme Court had yet to decide a case discussing whether non-punitive actions could create First Amendment retaliation liability in the educational or higher educational setting. Therefore, the focus should shift to Tenth Circuit decisions in this area.

Shortly after the Tenth Circuit established the *Worrell* framework, it applied it to a retaliation claim against a University of Colorado athletic department employee in *Smith v. Plati*, 258 F.3d 1167 (10th Cir. 2001). An operator of an internet sports site that competed with the University's own website asserted that the athletic department employee retaliated against him by having him ticketed for trespassing on school grounds and by denying him media access provided to others. *Id.* at 1172. The Tenth Circuit affirmed dismissal of the First Amendment retaliation claim, concluding that it failed to allege sufficient conduct to cause injury that would chill a person of ordinary firmness or the operator's ability to speak freely about university athletics on a website.

In *Pompeo v. Board of Regents of the University of New Mexico*, 852 F.3d 973, (10th Cir. 2017), the Tenth Circuit dealt with qualified immunity for an instructor and her department chair from a First Amendment retaliation claim based on their reactions to a student's paper that contained inflammatory language and for her disruptive and domineering behavior in class. The instructor accused the student of using hate speech, required her to rewrite the paper and suggested that the student not continue with the class. The appellate court upheld the district court's grant of qualified immunity to the instructor based upon the lack of clearly established law. The *Pompeo* Court concluded that the instructor's actions were sufficiently related to a pedological goal to fall within the hazy area between First Amendment protected speech and legitimate educational interests. *Id.*, at 988-989.

In *Hunt v. Board of Regents of the University of New Mexico* 792 Fed. App'x 595 (10th Cir. 2019)[1], the Tenth Circuit wrestled with a First Amendment retaliation claim against university officials from a graduate student sanctioned for off-campus social media posts. The Tenth Circuit, again, found the law unclear as to whether the school officials' conduct violated the First Amendment and affirmed the grant of qualified immunity. *Id*. at 606 ("In the end, Mr. Hunt has 'failed to identify a case where [a medical school administrator] acting under similar circumstances as [the defendants in this case] was held to have violated the [First] Amendment.") (brackets in original).

A few years later, the Tenth Circuit considered another First Amendment case in the university setting. This time, it found that clearly established law precluded an Associate Director for Student Conduct from imposing a prior restraint and no-contact order sanctions against a student who encouraged other classmates to honestly evaluate an instructor who had refused to accommodate her disability in the classroom. *Thompson v. Ragland*, 23 F.4th 1252, 1261-62 (10th Cir. 2022). *Thompson*, however, is readily distinguishable from this case: it involves punitive sanctions issued by a decision-maker concerning a student conduct violation. No such sanctions were issued here, and *Thompson* did not involve the reporting of the student's speech or an instructor's attempt to meet with a student to discuss the student's conduct.

None of the foregoing precedents provided Professor Swanson with the clear indication that her attempts to address peer complaints with Plaintiff at an informal level

---

[1] While an unpublished opinion cannot clearly establish the law, it can be relevant to show it was not clearly established. *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018).

would violate the First Amendment right to be free from retaliation. Prior decisions involve punitive actions or sanctions taken by university officials. No case has resolved whether non-punitive actions to address potential complaints of student conduct can create First Amendment liability. The same holds true for Professor Swanson's referral of the peer complaints concerning Plaintiff to the unit of the University that investigates potential discriminatory behavior.

Beyond the Tenth Circuit, one circuit decision that entertained a retaliation theory similar to Johnson's found no First Amendment liability. In *Bhattacharya v. Murray*, 93 F.4th 675 (4th Cir.), *cert. denied*, 145 S. Ct. 443 (2024), the Fourth Circuit, using a similar retaliation framework as *Worrell*, held that a referral to the professional conduct committee of a medical school did not create an injury sufficient to constitute a "chilling effect" on speech. *Id*. at 689. In that case, a medical student's persistent questioning of a guest lecturer resulted in a faculty member's referral to the committee's review for a potential violation. The Fourth Circuit noted that the non-punitive act of referring a complaint out for review did not create an objectively "chilling" impact on the student's speech for First Amendment purposes.[2] *Id.,* at 689.

Moreover, even in the closely related public employment context, the Tenth Circuit does not consider a referral for an investigation to be a sufficiently adverse action for a First Amendment retaliation claim. *See Lincoln v. Maketa*, 880 F.3d 533, 543 (10th Cir. 2018) (observing in granting qualified immunity for sheriff defendants that

---

[2] In addition, the Fourth Circuit further held that a letter from the Committee pointing out the disrespectful behavior of the student and suggesting that he consider counseling to find more appropriate ways to express himself was also not objectively "chilling" under the First Amendment. *Bhattacharya*, 93 F.4th at 689-90.

9

"we generally do not consider standard workplace investigations to be adverse employment actions").

In sum, no case clearly states that an instructor's efforts to directly discuss fellow students' complaints of speech with the speaker, or the forwarding of student complaints for further inquiry and investigation, can amount to First Amendment retaliation. On the contrary, the caselaw appears to suggest that injuries from such actions are constitutionally *de minimis* and fail to give rise to a First Amendment claim. If the law were otherwise, it would discourage and likely disable both instructors and institutions from making fair inquiry into potential allegations of discriminatory verbal conduct and thwart the ability to address classroom disruptions. Without qualified immunity, this lawsuit puts Professor Swanson in the Hobson's choice of exposing herself to sanctions for violating her University's mandatory reporting obligations or subjecting her to a student's First Amendment lawsuit. This is the archetypical scenario from which the doctrine of qualified immunity is intended to protect government officials.

## V. CONCLUSION

For the reasons stated, this Court should dismiss Professor Swanson from the case and hold that she is qualifiedly immune from the First Claim for Relief.

Respectfully submitted this 6th day of June, 2025.

                BERG HILL GREENLEAF RUSCITTI LLP

                *s/ Josh A. Marks*
                _____
                Josh A. Marks
                1712 Pearl Street

Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com

*Attorney for Defendant
Elizabeth K. Swanson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2025, I electronically filed the foregoing **DEFENDANT ELIZABETH K. SWANSON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

Hermine Kallman
Megan H. Clark
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO  80203
hermine.kallman@cu.edu
megan.clark@cu.edu

Scott E. Gessler
Geoffrey N. Blue
Gessler Blue LLC
7350 E. Progress Pl., Suite 100
Greenwood Village, CO  80111
sgesler@gesslerblue.com
gblue@gesslerblue.com

Michael D. McMaster
Robert W. Beck
Attorney General's Office
1300 Broadway, 6th Floor
Denver, CO  80203
michael.mcmaster@coag.gov
warren.beck@coag.gov

John-Paul Singh Deol
Matthew S. Sarelson
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA  94108
jpdeol@dhillonlaw.com
msarelson@dhillonlaw.com

Madison L. Hahn
Young America's Foundation
11480 Commerce Park Drive, Suite 600
Reston, VA  20191
mhahn@yaf.org

*s/ Shoshannah Ebersole-Raptor*
_____
Shoshannah Ebersole-Raptor