IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00390-GPG-NRN

ZOE JOHNSON

      Plaintiff,

v.

JUSTIN SCHWARTZ, in his official capacity as Chancellor
of the University of Colorado, Boulder,
ELIZABETH K. SWANSON,
SEQUOIA K. HILL, and
DANIE EDWARDS,

      Defendants.

_____

**DEFENDANT ELIZABETH K. SWANSON'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

_____

Defendant Elizabeth K. Swanson, through counsel and pursuant to F.R.C.P. 12(c), seeks judgment in her favor on the single claim asserted against her in Plaintiff's Second Amended Complaint (Doc. 102, the "Complaint"), and states as follows.

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR.7.1 and this Court's practice standards, undersigned counsel certifies that he has conferred with counsel for Plaintiff regarding the relief requested herein and can state that Plaintiff opposes the dismissal of Elizabeth K. Swanson. Additionally, this Motion does not raise deficiencies that are easily corrected in a revised complaint.

## I.     INTRODUCTION

Plaintiff challenges the University of Colorado's Nondiscrimination Policy under 42 U.S.C. § 1983, claiming Defendants violated the First Amendment by applying the Policy against her. The Complaint targets Professor Elizabeth K. Swanson along with the University Chancellor and two employees of the Office of Internal Equity ("OIEC"), the arm of the University that reviews and investigates potential violations of the Nondiscrimination Policy at its Boulder campus.

As relevant here, Plaintiff asserts a First Amendment retaliation claim against Professor Swanson because she reported complaints about comments made by Plaintiff in the class setting, as required by the Nondiscrimination Policy. Professor Swanson seeks judgment in her favor because the allegations in the Complaint, taken as true, do not establish any adverse action that can support this First Amendment retaliation claim. This motion also invokes qualified immunity for Professor Swanson because the law is not clearly established that her actions amounted to retaliation or would deprive Plaintiff of any First Amendment free speech rights.[1]

## II.     BACKGROUND

Plaintiff was an undergraduate student at the University's Boulder campus and a member of the choir ensemble, which is led by Professor Swanson. [Doc. 102, ¶¶ 72, 74.] In September 2022, an unidentified choir member complained to Prof. Swanson "that Plaintiff Johnson had made a discriminatory comment regarding people of color."

---

[1] This Motion reasserts Professor's Swanson's qualified immunity to Plaintiff's First Amendment Retaliation Claim against her as initially raised in her Motion to Dismiss (ECF # 41).

*Id*. at ¶ 76. Prof. Swanson responded with a "checking in" email to three students "who may not identify with the majority," "wondering if this comment struck you negatively," requesting their "thoughts and feelings surrounding it, if you wish to share them," and promising "to circle back tomorrow" during class discussion. *Id*. at ¶ 77 & Doc. 102-4. Professor Swanson also "met with Plaintiff Johnson regarding the statement." *Id*. at ¶ 78.[2]

During an October 2024 rehearsal, Plaintiff questioned the need for "a discussion on LGBTQ Pride and the history of Pride," remarking to fellow students, "Why do we need two months of this? Didn't we do this back in June?" *Id.* at ¶ 80. Offended, multiple students reported the comments to Prof. Swanson. *Id*. Reporting the incident to OIEC, Prof. Swanson "emailed Defendant Edwards [an OIEC investigator] that she encouraged any student who was offended by [Plaintiff]'s homophobic comment to file a report with the OIEC." *Id*. at ¶ 81; *see id*. at ¶ 38.

A few days later, another student reported to Prof. Swanson that [Plaintiff] had directed a condescending comment about "reverse racism" to her during an in-class Equity Workshop. *Id*. at ¶¶ 83-84 & Doc. 102-5. Professor Swanson "consulted with Dean Roeder" about these two "inappropriate comments," and the Dean recommended

---

[2] It is unclear from the Second Amended Complaint whether Plaintiff bases her retaliation claim against Prof. Swanson in part on this incident from 2022, or only on actions taken in 2024. [*See* Doc. 102, ¶¶ 135-137 (claim premised on undated allegations Prof. Swanson "referred Plaintiff Johnson to the University's OIEC and encouraged other University choir students to file their own complaints").] To the extent Plaintiff relies on 2022 actions, those are barred by the two-year statute of limitations. *See Ingram v. Cooper*, 163 F. Supp. 3d 1133, 1138 (N.D. Okla. 2016) (limiting scope of student's § 1983 claims against her professor to the alleged acts that took place within the statute of limitations).

that she escalate "these issues to a greater campus level," including by asking the complaining student to file an online report with the OIEC. [Doc. 102-5.] The student filed an anonymous report and thanked Prof. Swanson "for taking the initiative in this matter as it really does show your dedication to protecting our choir community." *Id*.

On a different choir practice date, Plaintiff commented to a fellow classmate on a male choir member's manner of dress. *Id.* at ¶ 93. That comment apparently offended another student, who reported it to Professor Swanson. *Id.*

Professor Swanson attempted to set an in-person meeting with Plaintiff to discuss these complaints. *Id* at ¶ 94; [Doc. 102-6, pg. 4.] Plaintiff refused multiple requests to set up a meeting, accusing Professor Swanson of harassment. [Doc. 102-6, pp. 2-4; *see* Doc. 102 ¶ 95.] Thwarted in her efforts to obtain Plaintiff's explanation of events, and under an obligation as a mandatory reporter to report potential violations of the Nondiscrimination Policy, Prof. Swanson advised Plaintiff she had forwarded the "information shared with me by other students" to OIEC. [Doc. 102-6, p. 2.]

Importantly, Plaintiff does not allege any punitive action by Professor Swanson such as requiring an apology to fellow students, public humiliation during class, or suspension from the choir. Plaintiff's retaliation claim rests solely on allegations that Prof. Swanson reported Plaintiff to OIEC (as University policy required) and encouraged complaining students to report directly to OIEC (as the Dean recommended). [Doc. 102, ¶¶ 135-137.]

As further discussed below, these allegations do not set forth a clearly established First Amendment violation sufficient to overcome qualified immunity.

### III.    LEGAL STANDARD

Courts "review[] a motion for judgment on the pleadings under Rule 12(c) under the same standard as a motion for Rule 12(b)(6)." *Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, 653 F. Supp. 3d 861, 865 (D. Colo. 2023) (citing *Adams v. Jones*, 577 F. App'x 778, 781 (10th Cir. 2014)).

Under the Rule 12(b)(6) motion to dismiss standard, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements (including legal conclusions) are not entitled to this presumption. *Id.* at 678, 681; *see Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

Where, as here, qualified immunity is raised in a Rule 12(c) motion, courts "apply a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in

light of clearly established law.'" *Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir. 1998) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)). Thus, "in the context of a Rule 12(c) motion, a plaintiff's pleadings must establish both that the defendant's actions violated a federal constitutional or statutory right and that the right violated was clearly established at the time of the defendant's actions." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1241 (10th Cir. 2000) (quoting *Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000)).

To demonstrate clearly established law, a Plaintiff must meet both qualitative and quantitative requirements. "Constitutional rights are clearly established when Tenth Circuit or Supreme Court precedent *particularized to the case* at issue exists." *Sanchez v. Guzman*, 105 F.4th 1285, 1293 (10th Cir. 2024). While a plaintiff is not required to identify a prior case with identical facts, precedent that encompasses "materially similar conduct" or applies "with obvious clarity to the conduct at issue" is required to place the constitutional question "beyond debate." *Id.* at 1292-93. In the absence of Tenth Circuit or Supreme Court precedent, a uniform body of law from other circuits may also create clearly established law. *Irizarry v. Yehia*, 38 F.4th 1282, 1293-94 (10th Cir. 2022).

### IV.    ARGUMENT

Taking Plaintiff's factual allegations as true, Professor Swanson forwarded student complaints to the OIEC for review, and "encouraged" complaining students to do the same. These are not clearly established retaliatory actions under the First Amendment. As shown below, Plaintiff cannot overcome either prong of Professor Swanson's qualified immunity.

## I.    Plaintiff Does Not Plausibly Plead a Constitutional Violation

"[W]hen a plaintiff brings claims against 'a defendant who is not the plaintiff's employer and... there is no contractual relationship between them,' courts apply the test outlined in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2010)." also known as the "*Worrell* test." *Foley v. City of Loveland*, No. 24-cv-02370-NYW-STV, 2025 WL 2613739, at *4 (D. Colo. Sept. 10, 2025) (quoting *Worrell*, 219 F.3d at 1212 and *Knopf v. Williams*, 884 F.3d 939, 945 n.4 (10th Cir. 2018)). Plaintiff here explicitly invokes the *Worrell* test in the Complaint. [Doc. 102, ¶ 144.]

To state a claim for First Amendment retaliation under this framework, a plaintiff must show 1) she engaged in constitutionally protected activity; 2) the defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the adverse action was substantially motivated as a response to the protected activity. *Worrell*, 219 F.3d at 1212.

Plaintiff's claim against Prof. Swanson fails on the second prong. Assuming (for purposes of this Motion only) that Plaintiff engaged in protected speech, she has not plausibly pleaded any actions sufficiently adverse, as a matter of law, to establish a constitutional violation.

"While not all threats of official action are actionable under the First Amendment, there is no bright line rule in the Tenth Circuit establishing when a threat is actionable." *Foley*, 2025 WL 2613739, at *6. The test is an objective one. *Id*. (citing *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)).

Here Plaintiff rests her claim solely on an investigation that led to no punitive consequences. Indeed, the Complaint's repeated declaration that "[t]he process is the punishment" amounts to a concession that Plaintiff faced no consequence beyond having to endure the investigative process itself. [Doc. 102, ¶¶ 105, 141 ("the process is the punishment")*; id*. at ¶¶ 155, 169 ("the punishment is the process").

But courts in this Circuit facing similar claims under *Worrell* test "generally 'do not consider standard workplace investigations to be adverse employment actions' in the context of a First Amendment retaliation claim." *Foley*, 2025 WL 2613739, at \*6 (quoting *Lincoln v. Maketa*, 880 F.3d 533, 543 (10th Cir. 2018); citing *Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1243 (10th Cir. 2009)). In *Lincoln* the Tenth Circuit remarked even a criminal investigation would not be a sufficiently adverse action, noting "an investigation is a far cry from formally filing charges and bringing someone to trial." *Lincoln*, 880 F.3d at 540. The court concluded placing police commanders on administrative leave, escorting them out of the building and taking their equipment, and investigating them through Internal Affairs "do not clearly show the existence of an adverse … action." *Id*. at 541.

While *Lincoln* arose in the employment context, its holding is directly applicable to the second prong of the *Worrell* test. In *Houston Community College Systems v. Wilson*, 595 U.S. 468, 477 (2022) ("*HCCS*"), the Supreme Court required a plaintiff to show a sufficiently "adverse action" in a non-employment retaliation case. Following *HCCS*, courts have found no distinction between employment and non-employment settings in requiring and assessing a sufficiently adverse action. *See Foley*, 2025 WL

2613739, at *5 & n.9.; *Givens v. City of Wichita*, 6:23-cv-01033-HLT-TJJ, 2024 WL 1198503 at *13 n.12 (D. Kan. Mar. 20, 2024).

Shortly after the Tenth Circuit established the *Worrell* test, it applied it to a retaliation claim against a University of Colorado athletic department employee in *Smith v. Plati*, 258 F.3d 1167 (10th Cir. 2001). An operator of an internet sports site that competed with the University's own website asserted that an athletic department employee retaliated against him by having him ticketed for trespassing on school grounds and by denying him media access provided to others. *Id*. at 1172. The court affirmed dismissal of the First Amendment retaliation claim because these allegations failed to show sufficient adverse action.

Beyond the Tenth Circuit, one circuit decision that entertained a retaliation theory like Plaintiff's here found no First Amendment liability. In *Bhattacharya v. Murray*, 93 F.4th 675 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 443 (2024), the Fourth Circuit, using a similar retaliation framework as *Worrell*, held that a referral to the professional conduct committee of a medical school did not create an injury sufficient to constitute a "chilling effect" on speech. *Id*. at 689. In that case, a medical student's persistent questioning of a guest lecturer resulted in a faculty member's referral to the committee's review for a potential violation. The Fourth Circuit noted that the non-punitive act of referring a complaint out for review by a student conduct committee did not create an objectively "chilling" impact on the student's speech for First Amendment purposes. *Id*. at 689-90. Nor did a letter from the committee pointing out the disrespectful behavior of the student and suggesting he consider counseling. *Id*.

Most recently, the Fifth Circuit also considered "how 'adverse' an 'adverse employment action' needs to be" to support a retaliation claim in the higher-education context. *Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025), *cert. pending*, No. 95-297 (U.S. filed Feb. 3, 2026). There too, following settled circuit precedent, the court found "mere accusations or criticism," "investigations," "false accusations," "rude statements," and a "colleague's reporting him to the police" caused the plaintiff discomfort, but did not amount to action adverse enough to establish a retaliation claim. *Id*. at 743.

Thus, at least in the Tenth Circuit, a plaintiff must plead specific punitive actions taken or sanctions imposed by university officials to satisfy the second prong of the *Worrell* test. Non-punitive actions to address complaints about student conduct do not suffice. *See MohanKumar v. Kansas State Univ.*, 60 F. Supp. 2d 1153, 1162 (D. Kan. 1999), *aff'd*, 221 F.3d 1352 (10th Cir. 2000) (graduate student's Title VII and § 1983 retaliation claims against professor failed because "it is not enough that this incident may have caused distress or impacted her academic work"). Plaintiff has alleged no such actions here. Professor Swanson is entitled to qualified immunity as a result of this failure to allege a First Amendment retaliation claim. She is entitled to judgment for this reason alone.

## II.   Professor Swanson is Entitled to Qualified Immunity Due to Lack of Clearly Established Law

In addition, and for similar reasons, Professor Swanson is entitled to qualified immunity on an alternate ground. As the discussion above suggests, no clearly established law existed in this Circuit that would have put Professor Swanson on notice that fulfilling her role as a mandatory reporter of student complaints, or advising

individual students to report concerns directly to the University, could be an "adverse action" sufficient to violate Plaintiff's First Amendment right to be free from retaliation.

As of November 2024, the Supreme Court had yet to decide a case discussing whether non-punitive actions could create First Amendment retaliation liability in the educational or higher educational setting.[3] Therefore, the focus should shift to Tenth Circuit decisions in this area. As discussed above, cases explicating the *Worrell* test rule out any notion that a reasonable official would believe merely investigating and referring complaints could lead to liability. Additional caselaw analyzing qualified immunity in educational settings leads to the same conclusion.

In *Pompeo v. Board of Regents of the University of New Mexico*, 852 F.3d 973 (10th Cir. 2017), the Tenth Circuit dealt with qualified immunity for an instructor and her department chair from a First Amendment retaliation claim based on their reactions to a student's paper and behavior in class. The instructor accused the student of using hate speech, required her to rewrite the paper, and suggested the student not continue with the class. The appellate court upheld the district court's grant of qualified immunity to the instructor based upon the lack of clearly established law, concluding the instructor's actions were sufficiently related to a pedological goal to fall within the hazy area between First Amendment protected speech and legitimate educational interests. *Id.* at 988-989. Most relevant here, the Tenth Circuit found no clearly established "right to use

---

[3] Although the Supreme Court in *HCCS* found no adverse action by community college trustees who verbally censured a peer trustee, it is consistent with the notion that non-punitive measures do not rise to the level of adverse action.

language in a course assignment that [plaintiff's] professors found to be inflammatory without being criticized or pressured to make revisions." *Id*. at 990.

In *Hunt v. Board of Regents of the University of New Mexico*, 792 Fed. App'x 595 (10th Cir. 2019)[4], the Tenth Circuit wrestled with a First Amendment retaliation claim against university officials from a graduate student sanctioned for off-campus social media posts. The Tenth Circuit, again, found the law unclear as to whether the school officials' conduct violated the First Amendment and affirmed the grant of qualified immunity. *Id*. at 606 ("In the end, Mr. Hunt has 'failed to identify a case where [a medical school administrator] acting under similar circumstances as [the defendants in this case] was held to have violated the [First] Amendment.") (brackets in original)).

A few years later, the Tenth Circuit considered another First Amendment case in the university setting. This time, it found clearly established law precluded an Associate Director for Student Conduct from imposing a prior restraint and no-contact order against a student who encouraged other classmates to honestly evaluate an instructor who had refused to accommodate her disability in the classroom. *Thompson v. Ragland*, 23 F.4th 1252, 1261-62 (10th Cir. 2022). *Thompson*, however, is readily distinguishable from this case: it involves punitive sanctions issued by a decision-maker concerning a student conduct violation. No such sanctions were issued here (certainly not by Prof. Swanson), and *Thompson* did not involve the reporting of the student's speech.

---

[4] An unpublished opinion cannot clearly establish the law but can be relevant to show it was not clearly established. *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018).

Very recently, the Tenth Circuit held the parents of a fifth-grade student could state a claim of retaliation under *Worrell* against school officials for adverse actions taken after the parents filed a Title IX claim against their son's teacher. *Stepp v. Lockhart,* 168 F.4th 1286 (10th Cir. 2026). The *Stepp* court found the retaliation framework established in *Worrell* applied with sufficient clarity to the facts of that case to preclude qualified immunity for the school principal and teacher who took the adverse actions. *Id*. at 1311. But the extreme factual circumstances described in *Stepp* do not assist Plaintiff here. There, the parents were subject to profanity-laced verbal assaults and threatened with physical violence, while their fifth grader was forced by his teacher to sit on the floor rather than at a desk and humiliated in front of his classmates. *Id*. at 1297-99, 1310. On these facts, the Tenth Circuit found a reasonable official would know in 2022 "that punishing a fifth-grade student and publicly blaming the parents for ending sex-segregated classes because they complained about a teacher's abusive treatment of their child is unconstitutional conduct." *Id*. at 1312. These facts, and this statement of clearly established law, would not have put Professor Swanson on notice that her actions here would amount to retaliation.[5]

---

[5] *Stepp* shares similarities to *Seamons v. Snow* 84 F.3d 1226 (10th Cir. 1996), a case that is also distinguishable as it centered around an ultimate sanction. In *Seamons*, a football player reported being hazed by his teammates. In response, the defendant-coach demanded that the complaining player apologize to his teammates. When the complaining player refused to apologize, the coach removed him from the team. On appeal, the Tenth Circuit determined that removing the complaining player from the team violated his First Amendment rights, but it did not couch the analysis in terms of sufficiently retaliatory conduct. *Seamons, supra.*, 84 F.3d at 1238. At either rate, the coach imposed the ultimate sanction that he could impose by kicking the plaintiff off his team.

In sum, no case clearly states that an instructor's forwarding of student complaints for further inquiry and investigation, or encouragement to students to report their concerns—especially in the absence of any punitive or disciplinary action—can amount to First Amendment retaliation. On the contrary, the caselaw appears to suggest that injuries from such actions are constitutionally *de minimis* and fail to give rise to a First Amendment claim.

If the law were otherwise, it would discourage and likely disable both instructors and institutions from making fair inquiry into potential allegations of discriminatory verbal conduct and thwart the ability to address classroom conditions. Without qualified immunity, this lawsuit puts Professor Swanson in the Hobson's choice of exposing herself to sanctions for violating her University's mandatory reporting obligations or subjecting her to a student's First Amendment lawsuit.[6] This is the archetypical scenario from which the doctrine of qualified immunity is intended to protect government officials, "to ensure that fear of liability will not 'unduly inhibit [them] in the discharge of their duties.'" *Caldwell v. Univ. of New Mexico Bd. of Regents*, 679 F. Supp. 3d 1087, 1135 (D.N.M. 2023) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

## V.    CONCLUSION

For the reasons stated, this Court should determine as a matter of law that Plaintiff has not stated a claim for First Amendment retaliation against

---

[6] "A person faces a 'Hobson's choice' if one of the two options presented is obviously unacceptable. In this situation, the party has no choice, and therefore selecting the only remaining option is not a knowing and voluntary choice." *Nicholas v. Dep't of Health, State of Colo.*, No. 90-C-1050, 1990 WL 504819, at *4 (D. Colo. Dec. 26, 1990), *aff'd*, 951 F.2d 1259 (10th Cir. 1991).

15

Professor Swanson; or in the alternative, that Professor Swanson is qualifiedly immune from the First Claim for Relief; enter judgment on the pleadings in favor of Professor Swanson, and dismiss her from the case with prejudice.

Respectfully submitted this 11th day of May 2026.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Josh A. Marks*
Josh A. Marks
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com

*Attorney for Defendant Elizabeth K. Swanson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2026, I electronically filed the foregoing **DEFENDANT ELIZABETH K. SWANSON'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Geoffrey N. Blue
Scott Gessler
Gessler Blue Law
7350 E. Progress Pl., Suite 100
Greenwood Village, CO 80111
gblue@gesslerblue.com
sgessler@gesslerblue.com

John-Paul S. Deol
Dhillon Law Group, Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
jpdeol@dhillonlaw.com

Matthew Sarelson
Dhillon Law Group
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
msarelson@dhillonlaw.com

*Attorneys for Plaintiff*

Megan Clark
Hermine Kallman
Special Assistant Attorneys General
University of Colorado
Office of University Counsel
1800 Grant St., Ste. 700
Denver, CO 80203
megan.clark@cu.edu
hermine.kallman@cu.edu

R. Warren Beck
Michael McMaster
Attorney General's Office
1300 Broadway, 10th Floor
Denver, Colorado 80203
warren.beck@coag.gov
michael.mcmaster@coag.gov
*Counsel of Record

*Attorneys for Defendant Schwartz*


*s/ Jessica Vecchio*
Jessica Vecchio

4936-7218-1578, v. 2

16