IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00390-GPG-NRN

ZOE JOHNSON

Plaintiff,

v.

ELIZABETH K. SWANSON, et al.,

Defendants.

---

**DEFENDANT ELIZABETH K. SWANSON'S AMENDED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Defendant Elizabeth K. Swanson, through counsel, respectfully submits this Reply in Support of her Motion for Judgment on the Pleadings (ECF 111) (the "Motion"):

## I. Plaintiff Fails to Allege Adverse Action Sufficient to Support Her First Amendment Retaliation Claim

To state her claim for First Amendment retaliation, Plaintiff must allege facts showing 1) she engaged in constitutionally protected activity; 2) Professor Swanson's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the adverse action was substantially motivated as a response to the protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2010). The parties agree this *Worrell* test applies and only its second prong is currently in dispute. ECF 111, p.7; ECF 130, pp. 4-5.

Thus, the question of law for the Court is whether Prof. Swanson's alleged actions would objectively chill the speech of a person of ordinary firmness.[1]

Plaintiff first takes issue with Prof. Swanson's recitation of the facts. Contending the Motion "fundamentally misrepresents the allegations in the Second Amended Complaint," Plaintiff offers her own gloss on those allegations. ECF 130, pp. 1-4. This Court need not rely upon either party's characterizations: it has Plaintiff's allegations—and crucially, her exhibits—and will reach its own conclusions as to what can be reasonably inferred from those facts and whether Plaintiff's allegations are consistent with her own documentary evidence. *See Smith v. Plati*, 258 F.3d 1167, 1172 n.2 (10th Cir. 2001); *id*. at 1177 n. 9.

Relatedly, Plaintiff claims the Motion "fails because it relies on a sanitized version of the facts … and fails to recognize that the process is the punishment." ECF 130, p. 5. As Prof. Swanson pointed out, Plaintiff's repeated reliance on this phrase effectively concedes she bore no punitive consequences beyond having to endure the investigation itself. Doc. 111, p. 8. Plaintiff's doubling-down here has fatal consequences for her claim, as discussed in the Motion and further below.

Next Plaintiff attempts to carry her legal burden with a single string-cite. Doc. 130, pp. 6-7. She suggests the cases mandate a conclusion the facts alleged here

[1] Plaintiff's insistence she was subjectively chilled (Doc. 130, pp. 6, 8 (citing Doc. 102 ¶ 104)) is irrelevant to the analysis. "The focus, of course, is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled." *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (emphasis original).

"would unquestionably" chill a person of ordinary firmness. They do not, because the circumstances Plaintiff's cases describe bear little resemblance to her allegations here.

For instance, in *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007), officials allegedly brought armed deputies to in-person meetings to physically bump and menace the plaintiff in response to complaints about his property tax valuation. The Tenth Circuit had little difficulty concluding "allegations of physical and verbal intimidation, including a threat by a deputy sheriff to shoot him if he brought any more tax appeals, would surely suffice under our precedents to chill a person of ordinary firmness." *Id*. Here, there were no in-person meetings, much less physical touching or threats of deadly force.

Similarly, in *I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. for Jefferson Cnty. Sch. Dist*., 452 F. Supp. 3d 989, 1005 (D. Colo. 2020), the defendant principal "(1) … complained about [the student] I.G. to school teachers and staff; (2) … made a radio transmission disclosing that I.G. was receiving counseling; (3) … attempted to gain access to I.G.'s confidential counseling records; and (4) the School refused to transmit I.G.'s records to schools to which I.G. was attempting to transfer." *Id*. These facts are simply not analogous; nothing in Plaintiff's allegations here comes close to this extraordinary level of retribution.

So too with *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004). There, the Eleventh Circuit was faced with a claim of compelled speech, not retaliation. *Id*. at 1267-68. And again, the facts were far more egregious. The student was "singled out [by his teacher] … in front of his entire class, subjecting him to

embarrassment and humiliation." *Id*. at 1269. Later, he was physically paddled by the school principal with the teacher present. *Id*. Though there was no retaliation claim before it, the court nevertheless remarked (quite correctly) that such punishment "cannot help but have a tremendous chilling effect on the exercise of First Amendment rights." *Id*.

These cases, whose facts are so different from Plaintiff's allegations, do not carry her burden to establish the existence of a constitutional violation here.[2]

Conversely, Plaintiff dismisses the cases cited in Prof. Swanson's Motion as "irrelevant." Doc. 130, p. 7. Plaintiff misunderstands both the relevant analysis and the cases themselves.

Plaintiff attempts to distinguish *Lincoln v. Maketa*, 880 F.3d 533 (10th Cir. 2018) and *Houston Community College Systems v. Wilson*, 595 U.S. 468 (2022) (*"HCCS"*) because these cases did not involve students or universities. That is correct but misses the point. The Motion noted these cases establish the governing analytical framework:

[2] Plaintiff also cites *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019) for the proposition that apparent punitive authority can chill speech. But there, the court was considering organizational standing for a facial challenge to a speech policy, not the test for retaliation against an individual plaintiff. *Id*.

Regrettably, Plaintiff misstates the holding of a final case, *Thompson v. Ohio State Univ.*, 92 F. Supp. 3d 719, 734 (S.D. Ohio 2015). She represents *Thompson* as "acknowledging that a teacher's referral to the Office of Student Conduct for an alleged violation of the terms of a student's suspension constituted an adverse action for First Amendment retaliation purposes." Doc. 130, p. 7. But the *Thompson* court explicitly held it "<u>need not address that issue</u>. Because [the teacher] concedes that her referral constitutes an adverse action, the Court will assume without deciding that Plaintiff meets the second prong of the First Amendment retaliation test." *Id*. (emphasis added). The court also remarked, "It is entirely unclear whether the fact that Plaintiff had an entity investigate her … is more than a *de minimis* injury." *Id.*

in *HCCS* the Supreme Court required a plaintiff to show “adverse action” in a non-employment retaliation case; after *HCCS*, the retaliation test in employment cases like *Lincoln* also applies to non-employment cases such as this; and that test includes assessing the required sufficiently adverse action. *See* Doc. 111, pp. 8-9.

Consistent with her misapprehension, Plaintiff asserts “*Lincoln* never addressed whether a workplace investigation could chill a person of ordinary firmness from continuing to engage in protected activity.” Doc. 130, p. 8. Indeed, *Lincoln* was an employment case—not a First Amendment case. However, as just discussed, its retaliation framework now applies to First Amendment retaliation claims like Plaintiff’s. Accordingly, Plaintiff cannot simply wave away the Tenth Circuit’s on-point conclusion: courts “generally do not consider standard workplace investigations to be adverse … actions.” *Lincoln*, 880 F.3d at 543. *See also Foley v. City of Loveland*, No. 24-cv-02370-NYW-STV, 2025 WL 2613739, at *6 (D. Colo. Sept. 10, 2025) (applying this rule to a First Amendment retaliation claim).

And again, an internal investigation is the most serious outcome alleged here. In Plaintiff’s own words, Prof. Swanson is accused of “referring a student to a disciplinary office, encouraging other students to file complaints against that student, threatening removal from the choir ensemble, and coaching students on what to write in their reports.” Doc. 130, p. 1. No complaints or investigation resulted in punishment; Plaintiff was never removed from the choir. The investigation was not an adverse action, and there was no other sufficiently adverse action.

Plaintiff bore the burden to show why the facts she alleges amount to a constitutional violation under governing law. That law requires a plaintiff to satisfy the second prong of the *Worrell* test by alleging specific punitive actions taken or sanctions imposed by university officials. Plaintiff pleaded only non-punitive actions addressing complaints about student conduct. These are insufficient as a matter of law, and Plaintiff's claim against Professor Swanson should be dismissed on that ground.

## II. Plaintiff Fails to Meet her Burden to Show the Law Was Clearly Established Professor Swanson's Actions Would Violate the First Amendment

Once the Motion raised qualified immunity, the burden shifted to Plaintiff to show Prof. Swanson's actions clearly violated existing law. Plaintiff's Response fails to shoulder that burden. Instead, it focuses on arguments not pertinent to the qualified immunity analysis. When Plaintiff does address the law concerning *Worrell*'s second element, she fails to identify applicable precedent putting the constitutionality of Professor Swanson's actions "beyond debate." ECF 130, p. 10.

The Response devotes significant discussion to whether Plaintiff's speech was protected under the First Amendment. ECF 130, pp. 10-11. Professor Swanson's qualified immunity argument, however, centers upon whether it was clearly established her actions were sufficiently chilling or retaliatory; the Motion assumed for present purposes that Plaintiff engaged in protected speech. *See* ECF 111, p. 7.

Plaintiff must show the law was clearly established as to the second prong of the *Worrell* test. If the law was not clear that her alleged retaliatory actions were sufficiently and objectively chilling, Prof. Swanson is entitled to qualified immunity. *See Weise v. Colorado Springs*, 421 F.Supp.3d 1019, 1046-47 (D. Colo. 2019) (city council members

who directed filing of ethical grievances against an attorney for protected speech immunized because caselaw did not establish those actions were "sufficiently chilling" for a retaliation claim); *Hirt v. Unified Sch. Dist. No. 287*, No. 17-cv-02279-HLT, 2019 WL 1866321 at *18 (D. Kan, Apr. 24, 2019) (banning plaintiff from school grounds was not clearly established as a retaliatory act under *Worrell*), *aff'd on other grounds sub nom. Clark v. Unified Sch. District No. 287*, 822 Fed. App'x 708 (2020). As *Hirt* demonstrates, this analysis equally applies to cases involving speech in the educational setting. *Id.*

The Response fails to identify established law defeating Prof. Swanson's qualified immunity. To find a public employee's conduct unconstitutional "beyond debate," the Supreme Court requires courts to reject pre-existing cases defining the constitutional right at a high level of generality. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (rejecting attempt to use First Amendment jurisprudence indicating a general right to be free from viewpoint discrimination as creating clearly established law).

Plaintiff ignores this mandate and peppers her analysis with caselaw restating general propositions of First Amendment law. *See* ECF 130, pp. 10-11 (citing *Reichle v. Howard*, 566 U.S. 658 (2012) ("the 'general right to be free from retaliation for one's speech exists'"); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) ("[Students] cannot be punished merely for expressing their personal view on the school premises"); *and Papish v. Bd of Curators of Univ. of Mo.*, 410 U.S. 667 (1973) (First Amendment protections extend to public universities who cannot punish the dissemination of ideas)).

In the Tenth Circuit at least, a plaintiff must identify precedent that is particularized to the case at issue—meaning precedent with "materially similar conduct" or cases that apply "with obvious clarity to the conduct at issue" to place the constitutional question "beyond debate." *Sanchez v. Guzman*, 105 F.4th 1285, 1293 (10th Cir. 2024). In essence, the Response relies upon *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996) and *Thompson v. Ragland*, 23 F.4th 1252 (10th Cir. 2022) to supply that precedent.[3]

As more thoroughly discussed in the Motion, both cases addressed situations where a school official imposed sanctions such as kicking a player off the football team for not apologizing and imposing a gag order against a student who encouraged other students to be critical of a professor's behavior. *See* ECF 111, pp. 12-13 n.5.[4] But Prof. Swanson did not punish or sanction Plaintiff. She received student complaints which she reported to the University's investigatory arm (as a mandatory reporter) and encouraged students who actually overheard the comments to involve themselves in the reporting process. ECF 102, ¶¶ 80-81, 83-84, 135-137. After Plaintiff rebuffed Prof. Swanson's extensive efforts to discuss the complaints with her, Prof. Swanson indicated continued inappropriate behavior could lead to sanctions. Plaintiff suggests Prof. Swanson did more, such as threatening to lock out Plaintiff from student registration and

[3] Plaintiff devotes the remaining sections of her Response to distinguishing the legal authority cited in the Motion's survey of caselaw. That effort only emphasizes the lack of directly applicable precedent that could have put an official on notice.

[4] *Seamons* is further unhelpful for qualified immunity because it was premised upon a direct regulation of speech theory and predated the recognition of *Worrell's* First Amendment retaliation framework. *See I.G.*, 452 F.Supp.3d at 1005. Therefore, it does not provide notice of what constitutes objectively chilling conduct under *Worrell.*

forcing her to attend a mandatory "re-education session" under threat of suspension. Doc. 130, p. 13. But the operative Complaint alleges these were actions of Defendants Hill and Edwards, not Prof. Swanson. Doc. 102, ¶¶ 98, 100.

This is a crucial distinction for the clearly established law analysis. Caselaw in the Tenth Circuit as of 2024 had yet to clearly define what non-sanction behavior constituted unconstitutionally retaliatory action. As set forth in the Motion, the Tenth Circuit's qualified immunity holdings for school officials who engaged in non-sanction behavior in *Pompeo v. Board of Regents of the University of New Mexico,* 852 F.3d 973 (10th Cir. 2017) and *Hunt v. Board of Regents of the University of New Mexico*, 792 Fed. App'x 595 (10th Cir. 2019) left that question unanswered. By her attempt to factually distinguish these cases in her Response, Plaintiff misses the significance of *Pompeo* and *Hunt* as they failed to clarify whether conduct analogous to Professor Swanson's actions was sufficiently retaliatory.

Plaintiff essentially claims it is clearly established that any activity in reaction to protected speech is sufficiently chilling. This fails to account for the cases that recognize some conduct is not sufficiently serious to objectively chill a reasonable person's speech for a retaliation claim. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). A spectrum of conduct exists that, depending on the nature of the action, will fall below or above the line of objectively retaliatory conduct. The Tenth Circuit has so far defined sanctioning students as objectively chilling behavior, but it has not provided further guidance. The Response largely ignores this state of the law as of 2024, which conveniently allows Plaintiff to misdirect the Court away from this constitutional grey

area.[5] But it is precisely in such indeterminate zones that qualified immunity is most appropriate.

For this reason, too, Plaintiff's claim against Prof. Swanson should be dismissed.

**WHEREFORE**, for the reasons set forth above, Defendant Elizabeth K. Swanson respectfully requests this Court enter judgment on the pleadings, dismiss Plaintiff's remaining claim against her with prejudice, and enter any other appropriate relief.

Respectfully submitted this 22nd day of June 2026.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Josh A. Marks*

Josh A. Marks
1712 Pearl Street
Boulder, CO 80302
Phone: (303) 402-1600
Fax: (303) 402-1601
Email: jam@bhgrlaw.com

*Attorney for Defendant*
*Elizabeth K. Swanson*

[5] Plaintiff cites to a district court decision from the District of Kansas, *Douglass v. Garden City Cmty. Coll.*, 652 F.Supp.3d 1329 (D. Kan. 2023). District court decisions do not clearly establish law. *See Camreta v. Green*, 563 U.S. 692, 709, n. 7 (2011); *Ullery v. Bradley*, 949 F.3d 1282, 1300 (10th Cir. 2020).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June 2026, I electronically filed the foregoing **DEFENDANT ELIZABETH K. SWANSON'S AMENDED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

Hermine Kallman
Megan H. Clark
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
hermine.kallman@cu.edu
megan.clark@cu.edu

Scott E. Gessler
Geoffrey N. Blue
Gessler Blue LLC
7350 E. Progress Pl., Suite 100
Greenwood Village, CO 80111
sgesler@gesslerblue.com
gblue@gesslerblue.com

Michael D. McMaster
Robert W. Beck
Attorney General's Office
1300 Broadway, 6th Floor
Denver, CO 80203
michael.mcmaster@coag.gov
warren.beck@coag.gov

John-Paul Singh Deol
Matthew S. Sarelson
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
jpdeol@dhillonlaw.com
msarelson@dhillonlaw.com

*s/ Stephanie MacDonald*

Stephanie MacDonald